IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MINNESOTA LAWYERS           :    CIVIL ACTION
MUTUAL INSURANCE CO.,       :    NO. 11-1470
                            :
Plaintiff,                  :
                            :
v.                          :
                            :
CHRISTOPHER MAZULLO, et al., :
                            :
Defendant.                  :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        JUNE 19, 2012


        Minnesota Lawyers Mutual Insurance Co. ("Plaintiff")

commenced this diversity action[1] against Christopher Mazullo,

Anthony J. Mazullo, Jr., Kevin J. Murphy, and Mazullo & Murphy,

P.C., (collectively "Defendants") for a declaratory judgment that

it has no duty to defend or indemnify Defendants in two

underlying actions in the Court of Common Pleas for Bucks County.

Plaintiff and Defendants filed cross-motions for summary

judgment. For the reasons that follow, the Court will grant

Plaintiff's motion and deny Defendants' cross-motion.

---

[1]         Plaintiff is a Minnesota corporation with a principal
place of business in Minneapolis, Minnesota. Compl. ¶ 4, ECF No.
1. The individual Defendants reside in Pennsylvania. Answer ¶¶ 5-
7, ECF No. 7. Mazullo & Murphy is a professional corporation
operating in Doylestown, Pennsylvania. Compl. 1.

**BACKGROUND**

**I.**

Plaintiff issued a "claims made" professional liability insurance policy to Mazullo & Murphy, for the period of April 1, 2008, to April 1, 2009.[2] Lawyers Professional Liability Insurance Claims-Made Policy Declarations, Compl. Ex. A [hereinafter "Policy"]. The Policy provides the following coverage:

> WE will pay all sums up to the limit of OUR liability, which the INSURED may be legally obligated to pay as DAMAGES due to any CLAIM:
>
> > (1) arising out of any act, error or omission of the INSURED or a person for whose acts the INSURED is legally responsible; and
> >
> > (2) resulting from the rendering or failing to render PROFESSIONAL SERVICES while engaged in the private practice of law or from rendering or failing to render PROFESSIONAL SERVICES as a PART TIME EMPLOYED ATTORNEY OF A GOVERNMENTAL BODY, SUBDIVISION OR AGENCY.

Policy 1. A "claim" under the Policy includes a "lawsuit served upon the INSURED seeking DAMAGES." Id. at 2. Relevant to this action, the Policy does not provide coverage for "(1) any CLAIM for DAMAGES arising out of the dishonest, criminal, malicious or deliberately fraudulent act, error or omission of the INSURED, subject to the Innocent Insured Protection provisions." Id. at 3. The Court will refer to this provision as "Exclusion 1."

---

[2]       "An 'occurrence' policy protects the policyholder from liability for any act done while the policy is in effect, whereas a 'claims made' policy protects the holder only against claims made during the life of the policy. St. Paul Fire & Marine Ins. Co. v. Barry, 438 U.S. 531, 535 n.3 (1978).

The victims of allegedly fraudulent investment schemes commenced two lawsuits during the Policy period. First, Ronald A. Levene commenced a civil action in the Court of Common Pleas of Bucks County, Pennsylvania, against Mazullo & Murphy, Anthony J. Mazullo, Jr., Christopher Mazullo, Kevin J. Murphy, and Christopher P. Kelly ("Levene Lawsuit").[3] Amended Complaint at 1, Levene v. Mazullo & Murphy, P.C., No. 10-1887 (Pa. Ct. Com. Pl. May 3, 2010) [hereinafter "Levene Amended Complaint"].[4] Levene alleges that on May 16, 2008, Roman R. Fitzmartin offered him an opportunity to invest in Doylestown Investment Group, L.L.C. ("DIG"). Id. ¶ 7. On June 5, 2008, Levene entered into an "Investment Agreement" whereby he agreed to invest $100,000 with DIG and Fitzmartin in exchange for six percent of DIG's Class B Limited Partner interest in Doylestown Retail Partners, L.P. ("DRP"), a guaranteed return on his investment plus fifteen percent of the principal invested by December 12, 2008, and Fitzmartin's personal guarantee for the $115,000 return. Id. ¶¶ 8-9. On December 3, 2009, Fitzmartin was indicted in federal court with two counts of mail fraud relating to a fraudulent real

---

[3]     Levene filed a Complaint on February 26, 2010. Compl. ¶ 14. The parties, however, do not indicate when the Levene Lawsuit commenced. In any event, the parties do not dispute that Levene commenced the action within the Policy period.

[4]     Plaintiff attached the Levene Amended Complaint as Exhibit C to its Motion for Summary Judgment.

estate investment scheme, and on January 20, 2009, Fitzmartin filed for bankruptcy. Id. ¶¶ 11-12.

Levene alleges the Levene Lawsuit defendants acted as agents, legal counsel, business associates, and partners with Fitzmartin, DIG, and DRP. Id. ¶¶ 14-17. Levene alleges the Levene Lawsuit defendants had knowledge of an April 11, 2007, cease-and-desist order issued by the Pennsylvania Securities Commission against Fitzmartin and DIG to halt the offer and sale of similar unregistered securities and failed to disclose the existence of the case-and-desist order during negotiations. Id. ¶¶ 18-23. Levene alleges the Levene Lawsuit defendants failed to disclose that the securities at issue were unregistered as required by the Pennsylvania Securities Act of 1972. Id. ¶¶ 24-25. Levene alleges that, during discussions and drafting of the Investment Agreement, the Levene Lawsuit defendants failed to disclose that certain financial disclosures Fitzmartin provided were false. Id. ¶¶ 26-32. Based on these allegations, Levene claims the Levene Lawsuit defendants committed violations of the Pennsylvania Securities Act of 1972, professional negligence, and misrepresentation by omission. Id. ¶¶ 46-69. Levene seeks actual damages in excess of $100,000, punitive damages, interest, and costs. Id. at 14.

Second, John H. McFadden and James Vesci, Jr., commenced a civil action in the Court of Common Pleas of Bucks

County, Pennsylvania, against Roman Fitzmartin, Christopher

Mazullo, Mazullo & Murphy, P.C., DIG, DRP, and other entities

("McFadden Lawsuit"). Complaint at 1, <u>McFadden v. Fitzmartin</u>, No.

08-10383 (Pa. Ct. Com. Pl. Apr. 1, 2009) [hereinafter "McFadden

Complaint"].[5] As is relevant here, McFadden and Vesci allege

Christopher Mazullo and Mazullo & Murphy acted as general

counsel, agents, representatives, and employees of DIG and the

other defendant entities. <u>Id.</u> ¶ 14. Furthermore, McFadden and

Vesci allege Christopher Mazullo invested in various partnerships

for which he served as counsel and prepared investment and loan

agreements. <u>Id.</u> ¶ 16.

        McFadden alleges that in March 2004, October 2007,

December 2007, and June 2008, he entered into various investment

and loan agreements as an investor and lender that were secured,

in some circumstances, by DIG's limited partner interests in

other limited partnerships. <u>Id.</u> ¶¶ 24, 36, 39, 42. McFadden

alleges Christopher Mazullo and others fraudulently induced him

into entering into the secured transactions by misrepresenting

the value of the security, the promise and likelihood of

repayment, the nature and purpose of the loan, the financial

condition of DIG, and the ownership and authority to transfer

DIG's limited partner interests. <u>Id.</u> ¶¶ 37, 40, 43. McFadden

---

[5]        Defendants attached the McFadden Complaint as Exhibit D
to their Cross-Motion for Summary Judgment.

further alleges that the limited partnerships were not registered pursuant to the Pennsylvania Securities Act of 1972. Id. ¶ 23.

Vesci alleges that in March 2006, October 2006, and October 2007 he entered into a similar series of investment agreements whereby he invested funds that were secured by certain of DIG's limited partnership interests. Id. ¶¶ 27-32. Furthermore, Vesci alleges Fitzmartin fraudulently induced him into execution of the investment agreements, and that the securities were not registered pursuant to Pennsylvania law. Id. ¶¶ 23, 29, 31, 34.

McFadden and Vesci allege that each of the limited partnerships identified in the McFadden Complaint is "defunct and the real estate holdings of the limited partnerships are subject to foreclosure proceedings." Id. ¶ 46. They allege that Christopher Mazullo and others solicited the investment and loan agreements, not to invest in real property and the operations of the limited partnerships, but to satisfy the obligations of other investors, in what is typically referred to as a "Ponzi" scheme.[6] Id. 48-49. As is relevant to this civil action, McFadden and Vesci claim Christopher Mazullo and Mazullo & Murphy committed negligent misrepresentation, intentional misrepresentation,

---

[6]      A "Ponzi scheme" is "[a] fraudulent investment scheme in which money contributed by later investors generates artificially high dividends or returns for the original investors, whose example attracts even larger investments." Black's Law Dictionary 1278 (9th ed. 2009).

breach of fiduciary duty, conversion, unjust enrichment, negligence, violations of the Pennsylvania Securities Act of 1972, and civil conspiracy. McFadden and Vesci seek actual damages in excess of $50,000, punitive damages, interest, and costs. Id. at 29.

**PROCEDURAL HISTORY**

**II.**

On March 2, 2011, Plaintiff filed a Complaint against Defendants seeking a declaratory judgment that Plaintiff has no duty to defend or indemnify the Defendants pursuant to the Policy for the claims alleged in the Levene Lawsuit and the McFadden Lawsuit. Compl. 1, 12. On May 6, 2011, Defendants answered. Answer 1.

Plaintiff moved for summary judgment. Pl.'s Mot. Summ. J. 1, ECF No. 14. And Defendant moved for summary judgment. Defs.' Cross-Mot. Summ. J. 1, ECF No. 15. The parties each responded to the motions. Pl.'s Resp. 1, ECF No. 16; Defs.' Resp. 1, ECF No. 17.[7] The matter is now ripe for disposition.[8]

---

[7] In their Cross-Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment, Defendants did not paginate their supporting briefs. Therefore, the Court refers to the pagination created by the Electronic Case Filing system.

[8] The Court exercises jurisdiction over the issue of whether Plaintiff owes Defendants a duty to defend pursuant to 28 U.S.C. §§ 1332, 2201(a).

**LEGAL STANDARD**

**III.**

Summary judgment is appropriate if there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court will view the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

Federal courts sitting in diversity generally apply substantive state law. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Here, the parties rely on Pennsylvania law in their written submissions to the Court, which indicates their agreement that Pennsylvania law governs the interpretation of the instant insurance contract. Therefore, the Court will apply Pennsylvania law in this case. See Advanced Med., Inc. v. Arden Med. Sys., Inc., 955 F.2d 188, 202 (3d Cir. 1992).

**DISCUSSION**

**IV.**

Plaintiff moves for summary judgment because certain exclusions in the Policy bar its duty to defend or indemnify Defendants in the underlying lawsuits. Defendants, on the other hand, move for summary judgment because those exclusions do not apply here. The Court first considers the rules of interpretation under Pennsylvania law applicable to this case and, thereafter, determines whether the Policy imposes on Plaintiff a duty to defend or indemnify Defendants.

A.  Interpretation of Insurance Contract Under Pennsylvania Law

"Whether a particular loss is within the coverage of an insurance policy is such a question of law and may be decided on a motion for summary judgment in a declaratory judgment action." Bowers v. Estate of Feathers, 671 A.2d 695, 697 (Pa. Super. Ct. 1995) (internal quotation marks omitted); see also Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997) ("The interpretation of an insurance contract is a question of law that is properly decided by the court." (citing Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983))). The Court constructs the terms of an insurance contract in context of the entire policy and accords those terms their plain meaning. See Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999); Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286, 290 (Pa. 2007) ("When the language of the policy is clear and unambiguous, we must give effect to that language." (internal quotation marks omitted)). But when a term is ambiguous, the Court construes the term in favor of the insured. See Frog, Switch & Mfg. Co., 193 F.3d at 746; Baumhammers, 938 A.2d at 290.

When determining whether an insurer has a duty to defend or indemnify an insured against claims made in litigation, the Court conducts the following analysis:

> A court's first step in a declaratory judgment action concerning insurance coverage is to determine the scope of the policy's coverage. After determining the scope of coverage, the court must examine the complaint in the underlying action to ascertain if it triggers coverage. If the complaint against the insured avers facts that would support a recovery covered by the policy, then coverage is triggered and the insurer has a duty to defend until such time that the claim is confined to a recovery that the policy does not cover. The duty to defend also carries with it a conditional obligation to indemnify in the event the insured is held liable for a claim covered by the policy. Although the duty to defend is separate from and broader than the duty to indemnify, both duties flow from a determination that the complaint triggers coverage.

Gen. Accident Ins. Co. of Am. v. Allen, 692 A.2d 1089, 1095 (Pa. 1997) (citations omitted). In making this determination, the Court takes the factual allegations in the underlying complaints as true and construes them in favor of the insured. See, e.g., Frog, Switch & Mfg. Co., 193 F.3d at 746 (citing Biborosch v. Transamerica Ins. Co., 603 A.2d 1050, 1052 (Pa. Super. Ct. 1992)); see also Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 896 (Pa. 2006) ("[T]he rule everywhere is that the obligation of a casualty insurance company to defend an action brought against the insured is to be determined solely by the allegations of the complaint in the action . . . ." (alteration in original)). "[I]f a single claim

in a multiclaim lawsuit is potentially covered, the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover on a covered claim." Frog, Switch & Mfg. Co., 193 F.3d at 746 (citing Erie Ins. Exch. v. Transamerica Ins. Co., 533 A.2d 1363, 1368 (Pa. 1987)).

The insurer shoulders the initial burden to establish coverage under an insurance policy. Butterfield v. Giuntoli, 670 A.2d 646, 651-52 (Pa. Super. Ct. 1995). The burden then shifts to the insured to establish that specific policy exclusions apply. Id.; see also Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999) ("Where an insurer relies on a policy exclusion as the basis for its denial of coverage and refusal to defend, the insurer has asserted an affirmative defense and, accordingly, bears the burden of proving such defense.").

B. Whether the Claims Raised in the Levene Lawsuit and the McFadden Lawsuit are Covered by the Policy

The claims asserted in the Levene Lawsuit and the McFadden Lawsuit generally fall within the Policy's scope of coverage. The Policy generally covers damages due to claims that arise out of the conduct of the insured and resulting from the rendering or failing to render professional services while engaged in the practice of law. Policy 1. The allegations in the underlying lawsuits are claims pursuant to the Policy's definition of a claim. Id. at 2. And those claims were made within the applicable coverage period announced on the Policy's declarations page. Defendant Mazullo & Murphy is a named insured, and the remaining individual defendants are insured under the Policy as partners or employees of Mazullo & Murphy. Id. at 2. And, as alleged in the underlying lawsuits, the claims resulted from the rendering of professional services within the terms of the Policy. Id. at 3. Therefore, the claims raised in the underlying lawsuits are generally covered by the Policy.[9]

---

[9]      Plaintiff does not dispute that the claims are generally within the Policy but, instead, asserts that certain express exceptions to coverage bar its duty to defend or indemnify.

C. <u>Whether the Claims Raised in the Levene Lawsuit and the McFadden Lawsuit are Specifically Excluded by the Policy</u>

Because the claims in the Levene Lawsuit and McFadden Lawsuit fall within the scope of the Policy, the Court next considers whether an exclusion applies. Exclusion 1 of the Policy expressly excludes from coverage "any CLAIM for DAMAGES arising out of the dishonest, criminal, malicious or deliberately fraudulent act, error or omission of the INSURED, subject to the Innocent Insured Protection provisions." Policy 3. Plaintiff argues that because Levene alleges the Levene Lawsuit defendants committed false, manipulative, and deceptive acts to induce Levene to invest in DIG, which allegations were incorporated into each count of the Levene Amended Complaint, the claims raised therein fall within Exclusion 1. Furthermore, Plaintiff argues that because McFadden and Vesci allege Christopher Mazullo and Mazullo & Murphy participated in soliciting investments to further a Ponzi scheme, which allegations are incorporated into each count asserted against those defendants, the claims raised therein fall within Exclusion 1.

Defendants, on the other hand, argue that Plaintiff has a duty to defend because the claims raised in the underlying lawsuits are not limited to claims that would fall within

14

Exclusion 1.[10] Instead, Defendants contend, Plaintiff has a duty to defend the underlying lawsuits because Levene, McFadden, and Vesci allege the Defendants are liable for Christopher Mazullo's professional negligence, which is covered by the Policy.

Two cases guide the Court with regard to the issue at hand. See Westport Ins. Corp. v. Hanft & Knight, P.C., 523 F. Supp. 2d 444 (M.D. Pa. 2007); Minn. Lawyers Mut. Ins. Co. v. Mazullo, No. 09-830, 2010 WL 1568465 (E.D. Pa. Apr. 19, 2010) (Robreno, J.). In Westport Insurance, Westport sought a declaration that it owed no duty to defend an underlying action against the estate of a deceased lawyer and his insured law firm. Former clients of the deceased lawyer sued his estate and the firm alleging that the lawyer fraudulently obtained from the clients over $800,000 in loans and interest for a construction project. The clients later learned there was no project and the lawyer, instead, used the money to gamble at casinos and to satisfy gambling debts. Against the lawyer's estate, the clients asserted claims of rescission of a later-executed promissory note intended to evidence the lawyer's debt, or, in the alternative,

---

[10]     Defendants note throughout their briefing that "[i]t has been specifically denied that Defendant Christopher Mazullo, Esquire engaged in any dishonest, criminal, malicious, or fraudulent activities." See, e.g., Defs.' Cross-Mot. Summ. J. 6. Defendants' argument is immaterial because, in determining whether Plaintiff has a duty to defend the underlying lawsuits, the Court looks solely to the allegations in the Levene Amended Complaint and McFadden Complaint and accepts the facts alleged as true. See Kvaerner Metals, 908 A.2d at 896.

breach of the note, and two counts of breach of contract. Against the law firm, the clients asserted claims of breach of professional and fiduciary duties and a violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law.

The Westport Insurance court dealt with an exclusion provision similar to Exclusion 1. The Westport Insurance policy excluded "any Claim based upon, arising out of, attributable to, or directly or indirectly resulting from any criminal, dishonest, malicious or fraudulent act, error, omission or Personal Injury committed by an Insured." 523 F. Supp. 2d at 458. Based on the plain meaning of the term "dishonest," the court concluded that the clients' allegations that their lawyer made false representations to induce them into lending money constituted "dishonest" acts subject to the policy's exclusion. Id.

The Westport Insurance court next considered the defendants' argument that "the underlying complaint alleges that [the lawyer] committed fraudulent and dishonest acts only in the alternative and that a jury could conclude that [the lawyer] was merely negligent." Id. The Court rejected this argument, however, because each count in the underlying complaint incorporated allegations that the lawyer took unfair advantage of his clients, engaged in improper self-dealing, abused a relationship of trust, and breached his professional obligations. Id. "Based on these

16

allegations, no reasonable jury could conclude that [the lawyer] was negligent, but not dishonest." Id.

Relying on Westport Insurance, this Court held that Minnesota Lawyers Mutual Insurance Company did not have a duty to defend Christopher Mazullo in underlying lawsuits involving fraudulent real estate investment projects, similar to the allegations made in the Levene Amended Complaint and McFadden Complaint, pursuant to an identical exclusion in a professional liability policy. Mazullo, 2010 WL 1568465, at *4-5. There, Mazullo argued that, although the underlying complaints did not allege claims of negligence, his insurer owed a duty to defend because the underlying plaintiffs generally alleged claims that did not arise out of fraud or the sale of securities or investments. Id. at *4. This Court, relying on Westport Insurance, rejected Mazullo's argument because the underlying plaintiffs "alleged dishonest, malicious and deliberately fraudulent actions [that were] precisely the types [of claims] that are intended to be excluded from coverage under the Policy." Id. at *5.

Viewing the complaints in the underlying lawsuits, as in Westport Insurance and Mazullo, Levene, McFadden, and Vesci make allegations of dishonesty, fraud, and maliciousness. Levene alleges Defendants, for their own gain, fraudulently induced Levene to invest in DIG, which allegations were incorporated into

17

each count in the Levene Amended Complaint. <u>See</u> Levene Am. Compl.
¶¶ 46, 50, 54, 62. And McFadden and Vesci allege Christopher
Mazullo and Mazullo & Murphy participated in the solicitation of
investments to further a Ponzi scheme, which allegations were
incorporated into each count in the McFadden Complaint. <u>See</u>
McFadden Compl. ¶¶ 67, 77, 82, 94, 100, 106, 110, 122, 137. The
Defendants alleged activities are precisely the type of dishonest
conduct the parties meant to exclude in the Policy.[11] <u>See</u>
<u>Westport Ins.</u>, 523 F. Supp. 2d at 458.

Defendants' attempts to distinguish <u>Westport Insurance</u>
and <u>Mazullo</u> are unavailing. Defendants argue that the Court
should not rely on <u>Westport Insurance</u> because, there, the court
"largely based" its decision on other policy exclusions. Defs.'
Resp. 9. While the <u>Westport Insurance</u> court indeed analyzed other
exclusions expressed in the policy at issue, none of the court's
further analysis detracts from that court's reasoning with regard
to an insurer's duty to defend an underlying lawsuit that
involves allegations of dishonest conduct. Next, Defendants argue
that <u>Mazullo</u> is distinguishable from this case because the
allegedly fraudulent transactions alleged in the underlying
complaints in <u>Mazullo</u> "differ[ed] significantly" from the
allegations in the Levene Amended Complaint and McFadden

---

[11]     Because the claims asserted against Defendants fall
within Exclusion 1, the Court will not reach whether the other
exclusion Plaintiff asserts applies.

Complaint. Id. at 10. Furthermore, Defendants argue that the underlying complaints in Mazullo did not assert claims of professional malpractice. Id. The distinctions Defendants point to are without legal significance. The underlying complaints in this case allege dishonest, malicious, and deliberately fraudulent misconduct, which allegations squarely fall within Exclusion 1. And although Plaintiff would not be relieved of its duty to defend if at least some of the allegations in the underlying complaint fall within the Policy, see Frog, Switch & Mfg. Co., 193 F.3d at 746, such is not the case here. In fact, all the claims in the underlying lawsuits rely on factual allegations of dishonest, malicious, or deliberately fraudulent misconduct. See Westport Insurance, 523 F. Supp. 2d at 458; Levene Am. Compl. ¶¶ 46, 50, 54, 62; McFadden Compl. ¶¶ 67, 77, 82, 94, 100, 106, 110, 122, 137.

Next, Defendants urge the Court to rely on two cases that are inapposite to the matter at hand. First, in Home Insurance Co. v. Perlberger, 900 F. Supp. 768 (E.D. Pa. 1995), a legal malpractice insurer sought a declaratory judgment that it was not under a duty to defend or indemnify a lawyer regarding certain claims that the lawyer negligently or intentionally induced a client with whom he had a romantic relationship to manage her assets to his benefit. Although the policy at issue in Perlberger expressly excluded from coverage certain "wrongful

19

acts," that exclusion affected the insurer's duty to indemnify, not defend, the lawyer. 900 F. Supp. at 771. And the Perlberger court did not render a decision on the merits of the insurer's claim that it was excused from indemnifying the lawyer based on the "wrongful acts" exclusion because the matter was not ripe for review. Id. at 772-74. Therefore, Perlberger is inapposite to this case.

Second, in Westport Insurance Corp. v. Bayer, 284 F.3d 489 (3d Cir. 2002), a professional liability insurer sought a declaratory judgment against an insured lawyer that it did not have a duty to pay an underlying judgment against the lawyer for his role in encouraging and overseeing certain investments made to further a Ponzi scheme. While the district court in that case did not find that the lawyer was criminally involved in the fraudulent scheme, see 284 F.3d at 492 n.2, the Bayer court did not consider whether the insurer was relieved of its duty to indemnify the lawyer because the lawyer's conduct fell within an express policy exclusion for wrongful, harmful, malicious, or fraudulent conduct. Id. at 498. And the court's decision offers no guidance on the interpretation of the exclusion at issue in this case. Therefore, Bayer is also inapposite.

Finally, Defendants argue that, even if the claims fall within Exclusion 1, Plaintiffs have a duty to defend Defendants Anthony J. Mazullo, Jr., Kevin Murphy, and Christopher Kelly

20

pursuant to the Innocent Insured Protection provision ("IIP provision") of the Policy. The IIP provision provides coverage for an insured "who did not personally participate in or acquiesce to any actual or alleged dishonest, criminal, malicious or deliberately fraudulent act, error or omission on another INSURED." Policy 4.

The Levene Amended Complaint names all Defendants and alleges dishonest, malicious, or deliberately fraudulent conduct on behalf of each Defendant. Defendants argue that the IIP provision applies because "Anthony J. Mazullo, Jr., Kevin Murphy, and Christopher Kelly had no involvement whatsoever with DIG or Mr. Levene, Mr. McFadden, and Mr. Vesci." Defs.' Resp. 11. Defendants' argument fails. Taking the facts alleged in the Levene Amended Complaint, which does not distinguish between the named defendants, as true, Defendants were personally involved in the dishonest, malicious, or deliberately fraudulent conduct alleged therein. Therefore, the IIP provision does not apply with respect to the Levene Lawsuit.

The McFadden Complaint names, among others, Christopher Mazullo and Mazullo & Murphy as defendants. Defendants appear to abandon their argument that the IIP provision applies with respect to Mazullo & Murphy. See Def.'s Resp. 11 ("While it is specifically denied that Christopher Mazullo was involved in any wrongdoing, Anthony J. Mazullo, Jr., Kevin Murphy, and

Christopher Kelly should be provided with a defense and indemnity pursuant to the Innocent Insured Protection Provisions of [the Policy].”). And even if Defendants did not abandon their argument, the firm is not an innocent insured under the Policy because the acts of Christopher Mazullo are imputed to the firm as a partner and principal of the firm. See Mendel v. Home Ins. Co., 806 F. Supp. 1206, 1211-12 (E.D. Pa. 1992) (holding that law firm personally participated in intentional acts and, accordingly, is not innocent party within insurance policy provision because intentional acts of firm’s officers and directors imputed to firm under agency principles); McFadden Compl. ¶ 13 (“At all times relevant hereto, Defendant Mazullo was a principle [sic] and partner in the law firm of Mazullo & Murphy.”). Therefore, the IIP provision does not apply with respect to the McFadden Lawsuit.

The allegations made in the underlying lawsuits constitute claims that are specifically excluded by the Policy. Therefore, Plaintiff is relieved of its duty to defend Defendants. Because Plaintiff does not owe a duty to defend Defendants, Plaintiff does not owe the narrower duty to indemnify Defendants. See Allen, 692 A.2d at 1095.

**CONCLUSION**

**I.**

      For the foregoing reasons, the Court will grant Plaintiff's Motion for Summary Judgment and deny Defendants' Cross-Motion for Summary Judgment. The Court will issue a declaratory judgment that Plaintiff does not owe a duty to defend or indemnify Defendants in <u>Levene v. Mazullo & Murphy, P.C.</u> (Civil Action No. 10-1887) and <u>McFadden v. Fitzmartin</u> (Civil Action No. 08-10383), which are pending in the Court of Common Pleas of Bucks County, Pennsylvania.